**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

CAROL W.,[1]
    Plaintiff,

        v.                                                                                                  Civil No. 3:20cv328

ANDREW M. SAUL,
Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

This is an action seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under the Social Security Act. Carol W. ("Plaintiff"), fifty-one years old at the time of her benefits application, last worked as a corrections officer for the Commonwealth of Virginia. (R. at 193, 205.) Plaintiff suffers from arthritis, high blood pressure, high cholesterol, left hip pain, carpal tunnel syndrome and right knee pain. (R. at 99.) Plaintiff alleges that work activities, such as sitting and standing for long periods of time, cause her significant pain, rendering her unable to work on a sustained basis. (R. at 102.)

Following a prior remand from this Court, on March 4, 2020, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability insurance benefits. (R. at 688-696.) After exhausting her administrative remedies, Plaintiff appealed to this Court. This matter comes before the Court by consent of the parties, pursuant to 28 U.S.C. § 636(c)(1), on the parties' cross motions

---

[1]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

for summary judgment, which are now ripe for review.[2]

Plaintiff seeks review of the ALJ's decision, arguing that the ALJ erred by failing to properly evaluate Plaintiff's subjective complaints of pain. (Pl.'s Mem. in Supp. of Mot. For Summ. J. 17-19, ECF No. 20 ("Pl.'s Mem.").) Plaintiff also argues that the ALJ failed to adequately explain why she afforded little weight to the opinion of Plaintiff's treating physician, Dr. Malalai Azmi, M.D., when determining Plaintiff's residual functional capacity. (Pl.'s Mem. at 10-16.)

For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 19), GRANTS Defendant's Motion for Summary Judgment (ECF No. 21), and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On August 31, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on June 1, 2015 due to arthritis, high blood pressure, high cholesterol, left hip pain, carpal tunnel syndrome, and right knee pain. (R. at 88, 99.) The Social Security Administration denied Plaintiff's claim initially on October 15, 2015, and again upon reconsideration on January 7, 2016. (R. at 98, 109.) Plaintiff requested a hearing before an ALJ, and the hearing was held on April 6, 2017. (R. at 37, 133-34.) On October 16, 2017, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 20-30.) Plaintiff requested review of the ALJ's decision, and

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Memorandum Opinion, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

2

on July 31, 2018, the Social Security Appeals Council denied Plaintiff's request, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-3.)

Thereafter, Plaintiff filed an appeal of the ALJ's decision in this Court. *Williams v. Berryhill*, No. 3:18cv669, 2019 WL 2939258, at *1 (E.D. Va. June 17, 2019), *report and recommendation adopted sub nom. Williams v. Saul*, 2019 WL 2931936 (E.D. Va. July 8, 2019). On July 8, 2019, the Court remanded the action for further proceedings consistent with its opinion. *Id.* Following the Court's Order, the Appeals Council vacated the ALJ's decision, and remanded the case to the ALJ for further proceedings. (R. at 791-93.) On remand, the Appeals Council noted that Plaintiff had subsequently filed a second application for disability insurance benefits on September 14, 2018, and the State agency found Plaintiff disabled under her second application as of October 17, 2017. (R. at 793.) Therefore, the Appeals Council instructed the ALJ to limit review to the period between June 1, 2015 and October 17, 2017. (R. at 793.)

The ALJ held a second hearing on February 12, 2020. (R. at 727-50.) On March 4, 2020, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act during the period between June 1, 2015 and October 17, 2017. (R. at 688-96.) The Appeals Council did not assume jurisdiction over the case, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.1484(c)-(d). Plaintiff now seeks judicial review of the ALJ's March 4, 2020 decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Cmm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that

which 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson*, 810 F.3d at 207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005 (per curiam)). Substantial evidence means more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (unpublished) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). The ALJ's decision is not reversible "merely because substantial evidence would have supported an opposite decision." *Id.* "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In evaluating the decision of the ALJ based on the entire record, the court must consider "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

### III. THE ALJ'S DECISION

On February 12, 2020, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 727-50.) On March 4, 2020, the ALJ issued a

written opinion finding that Plaintiff did not qualify as disabled. (R. at 688-96.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 690-96); 20 C.F.R. § 404.1520(a)(4); *see also Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between June 1, 2015 and October 17, 2017. (R. at 690.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: osteoarthritis and obesity. (R. at 691.) At step three, the ALJ determined that neither of these impairments, either individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 691.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, and the findings of the treating and examining health care providers. (R. at 691-94.) Based on this evidence, the ALJ

5

determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 401.1567(b) with the following limitations:

> [S]he can stand and/or walk for a total of four hours in an eight hour workday; she can never operate foot controls bilaterally; she can occasionally climb ramps and stairs, balance, and stoop, but can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl; she can never work at unprotected heights, can occasionally work with moving mechanical parts, and tolerate occasional exposure to vibration; and she is limited to unskilled work due to pain.

(R. at 691-92.) The ALJ explained this determination by summarizing the evidence in the record and holding that the objective medical findings in the record demonstrated that Plaintiff's functional limitations were not as severe as she alleged. (R. at 692-94.)

Based on this determination, at step four, the ALJ evaluated whether Plaintiff could perform her past relevant work. (R. at 694.) The ALJ concluded that Plaintiff's physical limitations prevented her from performing any of her past relevant work. (R. at 694.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 694.) The ALJ weighed the testimony of the vocational expert, who opined that, given Plaintiff's residual functional capacity, Plaintiff could work as a cashier, office machine operator, or office helper. (R. at 695.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could have made a successful adjustment to other work that exists in significant numbers in the national economy during the reviewing period. (R. at 695.) Accordingly, the ALJ concluded that a finding of "not disabled" was appropriate. (R. at 695.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ erred by (1) failing to properly evaluate Plaintiff's subjective complaints of pain; and (2) assigning little weight to the opinion of Plaintiff's treating physician, Dr. Azmi, when determining

6

Plaintiff's residual functional capacity. (Pl.'s Mem. at 10-19.) For the reasons set forth below, the ALJ did not err by denying Plaintiff's application for disability insurance benefits.

**A. The ALJ Accurately Assessed Plaintiff's Subjective Complaints of Pain.**

Plaintiff first argues that the ALJ erred in the residual functional capacity analysis by failing to consider the extent of Plaintiff's activities of daily living. (Pl.'s Mem. at 15-16.) Plaintiff also argues that the ALJ did not adequately explain her reasons for discrediting Plaintiff's testimony. (Pl.'s Mem. at 17-20.) Defendant responds that the ALJ considered the entire record in evaluating Plaintiff's subjective complaints of pain and properly characterized Plaintiff's testimony about her activities of daily living. (Def.'s Mot. for Summ. J. & Br. in Supp. Thereof 19-21, ECF No. 21 ("Def.'s Mem.").)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's residual functional capacity. § 404.1545(a). The residual functional capacity must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. § 404.1529(a). When evaluating a claimant's subjective complaints of pain in the context of a residual functional capacity determination, the ALJ must follow a two-step analysis. § 404.1529(a); *Craig*, 76 F.3d at 594.

The first step of the *Craig* analysis requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the claimant's pain or other related symptoms. § 404.1529(b); *Craig*, 76 F.3d at 594. This threshold determination requires a showing, by objective evidence, "of the existence of a medical impairment 'which could be reasonably expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. Only after this threshold

determination may the ALJ proceed to the second step and evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* at 595.

The second step, in which the ALJ determines the extent to which the pain impairs the claimant's ability to work, requires the ALJ to consider objective medical evidence and other objective evidence, as well as the claimant's allegations. *Craig*, 76 F.3d at 595. Subjective allegations of pain are not, alone, conclusive evidence that a claimant qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Although an ALJ may not discredit a claimant's allegations based on subjective allegations alone, a claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he or] she suffers." *Craig*, 76 F.3d at 595; § 404.1529(c)(4).

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Carpenter v. Berryhill*, No. 3:17cv248, 2018 WL 3385191, at *12 (E.D. Va. May 31, 2018) (quoting *Eldeco*, 132 F.3d at 1011). Thus, "[w]hen the ALJ appropriately considers all relevant factors, hears the claimant's testimony and observes [her] demeanor, the ALJ's credibility determination deserves [] deference." *Id.* (citing *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)). Therefore, this Court must accept the ALJ's factual findings and credibility unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *N.L.R.B. v. McCullough Env't Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Here, the ALJ recounted the details of Plaintiff's testimony, and the limitations Plaintiff testified about, stating:

> [T]he claimant indicated that she was using a cane when walking long distances or going on errands, and needed the cane for walking and balancing. According to the claimant, she can only drive for 20 to 30 minutes at a time, can only sit or stand for 15 to 20 minutes at a time without experiencing severe pain, her knee would lock or collapse without warning, and experienced daily pain at a six or eight out of 10. However, the claimant also indicated that she was able to prepare simple meals, buy groceries with a cart, and carry laundry, albeit only five or six pounds of clothes at a time.

(R. at 692.)

Having reported Plaintiff's statements, the ALJ proceeded to step one of the *Craig* analysis, finding that Plaintiff's medically determinable impairments, including her osteoarthritis and obesity, "could reasonably be expected to cause the alleged symptoms." (R. at 692.) However, at step two, the ALJ found that both the objective medical evidence in the record and Plaintiff's activities of daily living were not entirely consistent with Plaintiff's statements about "the intensity, persistence, and limiting effects" of her symptoms and pain. (R. at 692-93.) Plaintiff challenges this conclusion, arguing that the ALJ failed to "provide [a] legitimate rationale" for her credibility assessment. (Pl.'s Mem. at 17.)

Having reviewed the record and the ALJ's opinion, the Court concludes that substantial evidence supports the ALJ's decision and that the ALJ adequately explained her reasoning. First, with respect to the objective medical evidence, the ALJ acknowledged that Plaintiff has a history of osteoarthritis and obesity; frequently experienced back, knee pain and lower extremity edema; and that treatment providers counseled her to lose weight. (R. at 293, 692.) However, the ALJ pointed out that Plaintiff's knee conditions were treated with surgery and that her treatment providers noted "significant improvement post-operatively." (R. at 692-93; 514, 526 (Plaintiff's orthopedic surgeon noted that she had improved "significantly" at a follow-up appointment).) The

9

ALJ explained that Plaintiff displayed generally normal vital signs during physical examinations, including normal strength, sensation, and gait. (R. at 293, 296, 337, 447, 661, 667, 670, 677.) The ALJ also explained that there was no indication in the medical records that Plaintiff required a cane for ambulation during the evaluation period. (R. at 693.) Finally, the ALJ cited Plaintiff's visits with several treatment providers. (R. at 692.) For example, in August 2015, Plaintiff's cardiologist noted that she could walk up to half a mile, had "no physical impairment," and was not in any acute distress. (R. at 345-46, 384.) On another occasion, Plaintiff's spine intervention and pain specialist indicated that Plaintiff did not have difficulty doing errands alone despite her difficulty walking, climbing stairs, dressing, and bathing. (R. at 524, 547.) Given these records, substantial evidence exists to support the ALJ's conclusion that the medical evidence contradicted Plaintiff's testimony.

In addition to the objective medical evidence, the ALJ also relied on Plaintiff's range of activities of daily living to support the credibility determination. Specifically, the ALJ considered Plaintiff's testimony at her first and second administrative hearings, namely that Plaintiff was able to "sweep, do laundry, wash dishes while leaning across the sink, and grocery shop." (R. at 693.)

In assessing a claimant's daily activities, the ALJ must consider both the types of activities the claimant can perform, and the extent to which a claimant can perform them. *Woods v. Berryhill*, 888 F.3d 686, 694-95 (4th Cir. 2018). Plaintiff does not allege that the ALJ failed to consider the types of activities the Plaintiff can perform, arguing only that the ALJ did not acknowledge the extent to which she could perform these activities. (Pl.'s Mem. at 15, 18.) Specifically, Plaintiff argues that the ALJ failed to acknowledge certain limiting factors, such as the fact that Plaintiff's pain was so severe that she would have to lie down or take a break when sweeping the floor, could only do laundry piece by piece, needed help from her daughter to do laundry or household chores,

10

and would need to lean against the shopping cart when grocery shopping. (Pl.'s Mem. at 15-16 (citing R. at 46, 53, 65, 67).)

The Court finds no error. As to many of Plaintiff's complaints, the ALJ recounted Plaintiff's limitations almost verbatim, such as the fact that Plaintiff has to lean against a cart while grocery shopping, can only drive for twenty to thirty minutes at a time, and has to lean across the sink while washing dishes. (R. at 692-93.) As to others, the ALJ fairly summarized Plaintiff's testimony regarding her limitations and the extent of those limitations.[3] Indeed, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)); *see also Glenda W. v. Saul*, No. 7:18cv450, 2020 WL 825810, at *5 (W.D. Va. Feb. 19, 2020) (holding that an ALJ may summarize testimony while also considering other objective evidence on the record). Despite Plaintiff's contention, the ALJ's opinion makes clear that the ALJ sufficiently considered the extent to which Plaintiff could perform her activities of daily living. (R. at 692-93.) For these reasons, the Court concludes that the ALJ properly considered both the type of activities the Plaintiff could perform as well as the extent to which she could perform them. *Woods*, 888 F.3d at 694.

The Court also finds the ALJ's explanation adequate. As is evident from the description above, the ALJ considered Plaintiff's testimony throughout her opinion, as well as the objective medical evidence in the record. The ALJ "include[d] a discussion of which evidence the ALJ found

---

[3] Although the ALJ did muddle, to some extent, Plaintiff's ability to do laundry with her ability to carry, the ALJ did not mischaracterize Plaintiff's abilities and any error was not material. (*See* R. at 692.) Plaintiff testified that she could do laundry at a slow pace, and separately, that she was capable of lifting and carrying approximately seven pounds throughout the course of an average day. (R. at 739-40.) The ALJ stated that Plaintiff could carry five to six pounds of laundry at a time. (R. at 692.) The Court finds no error in this description.

credible and why," by comparing Plaintiff's subjective complaints of pain with her testimony about her activities of daily living and the objective medical evidence. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989)). Having considered all the evidence on the record, the ALJ explained that she accommodated Plaintiff's complaints of pain by providing for exertional limitations (limiting Plaintiff's ability to stand and/or walk for only four hours per day), foot control limitations (limiting Plaintiff to bilateral foot controls), postural limitations (limiting Plaintiff to occasional climbing, balancing and stooping but never climbing, crouching, kneeling, or crawling), and environmental limitations in Plaintiff's residual functional capacity. (R. at 693.) The ALJ ultimately concluded that Plaintiff's osteoarthritic pain limited her to unskilled work. (R. at 693.) Nonetheless, the ALJ did not fully credit Plaintiff's subjective complaints of pain because some were inconsistent with the record, and accordingly the ALJ did not provide for a more restricted residual functional capacity or find Plaintiff disabled based on those complaints.

Giving the ALJ's credibility determination deference, the Court finds that the ALJ appropriately reviewed the record and evaluated Plaintiff's statements about her subjective complaints of pain and the record evidence to determine Plaintiff's symptoms did not significantly limit Plaintiff's ability to work beyond the limitations identified in her residual functional capacity. Accordingly, the Court finds that there is substantial evidence to support the ALJ's findings concerning Plaintiff's subjective complaints and that the ALJ adequately identified the evidence upon which she relied.

**B. The ALJ Did Not Err by Assigning Dr. Azmi's Opinion Little Weight.**

Plaintiff next argues that the ALJ failed to adequately explain her reasons for assigning little weight to Dr. Azmi's opinion and that substantial evidence does not support the ALJ's

decision. (Pl.'s Mem. at 10-16); (Pl.'s Reply to Def.'s Mot. for Summ. J. 2-6, ECF No. 23 ("Pl.'s Reply").) Defendant responds that the ALJ adequately assessed Dr. Azmi's opinion and that substantial evidence supports the weight assigned. (Def.'s Mem. at 14-18.)

In general, an ALJ must consider all medical opinions on the record. § 404.1527(c). An opinion provided by a treating source, however, has special significance under the regulations. § 404.1527(c)(2). A treating source is a "medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." § 404.1527(a)(2). Under the "treating physician rule," an ALJ must give a medical opinion from a treating source controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with other substantial evidence." § 404.1527(c)(2); *see Arakas*, 983 F.3d at 106; SSR 96-2p, 1996 WL 374188 (July 2, 1996).[4]

If a medical opinion from a treating source is not entitled to controlling weight, the ALJ must consider certain factors to determine the weight to afford the opinion. § 404.1527(c)(2)-(6); *see Arakas*, 983 F.3d at 106. Those factors are: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based on the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. § 404.1527(c)(2)-(6). "While an ALJ is not required to set forth a detailed factor-by-factor analysis

---

[4]   Effective March 27, 2017, the Social Security Administration rescinded SSR 96-2p and what is known as the "treating physician rule." 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her application for benefits in 2015, before the Social Security Administration rescinded the rule. (R. at 193.)

in order to discount a medical opinion from a treating physician," the ALJ's decision must make demonstrate "that [s]he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021).

Courts generally should not disturb an ALJ's decision as to the weight afforded a treating physician's opinion absent some indication that the ALJ "dredged up 'specious inconsistencies.'" *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ "failed to give a sufficient reason for the weight afforded a particular opinion." *Id*.

On February 14, 2017, Dr. Azmi completed a medical source statement form. (R. at 549-50.) Dr. Azmi opined that Plaintiff would miss five or more workdays per month due to her medical conditions; she could occasionally walk, stand, and sit; could never stoop; and could climb infrequently with assistance. (R. at 549.) Dr. Azmi also indicated that Plaintiff could infrequently carry one to five pounds, occasionally carry six to ten pounds, but never carry eleven or more pounds. (R. at 549.) Dr. Azmi further indicated that Plaintiff could frequently use her hands for fine and gross manipulation and raise both right and left arms over her shoulders. (R. at 549.) Dr. Azmi opined that Plaintiff's pain was severe, she would be off task 70% of the day due to pain, she would need to elevate her legs for approximately three to four hours per day, and she would need to lie down three to four times per day for at least one hour. (R. at 550.) Finally, Dr. Azmi indicated that Plaintiff would need to take unscheduled break periods throughout the workday, required the use of an assistive device to walk, and that side effects from hydrocodone would interfere with her ability to maintain focus and concentration. (R. at 550.)

The ALJ reviewed Dr. Azmi's opinion and assigned the opinion little weight. (R. at 694.) The ALJ explained that she gave Dr. Azmi's opinion little weight because it was inconsistent with other substantial evidence in the record, including Dr. Azmi's own treatment notes, the treatment notes of other providers, and Plaintiff's own testimony about her capabilities. (R. at 693-94.) The ALJ noted that Dr. Azmi saw Plaintiff frequently between 2015 and 2017. (R. at 693.) However, the ALJ found that the evidence from Dr. Azmi's physical examinations of Plaintiff during that time was "starkly inconsistent" with the limitations indicated by Dr. Azmi's opinion. (R. at 693-94.) The ALJ noted that Plaintiff did not appear in distress during her visits with Dr. Azmi, and in treatment visits with Dr. Azmi and other providers she had normal physical examinations or displayed normal strength, sensation, and gait. (R. at 694.) Finally, the ALJ cited Plaintiff's testimony about her activities of daily living, notably that she could sweep, do laundry, wash dishes while leaning across the sink, and grocery shop. (R. at 694.) The ALJ therefore found that Dr. Azmi's opinion was not consistent with the record and accordingly assigned her opinion little weight. (R. at 694.)

The Court finds that the ALJ did not err in declining to assign controlling weight to Dr. Azmi's opinion. The ALJ adequately explained her decision to give Dr. Azmi's opinion less than controlling weight by pointing to categories of evidence in the record that contradict Dr. Azmi's opinion, specifically, Dr. Azmi's own treatment notes, treatment notes of other physicians, and Plaintiff's testimony about her activities of daily living. (R. at 694.) Although Plaintiff argues that the ALJ's explanation was too generalized and that the ALJ's citations to the record lacked specificity, the Court disagrees. Here, unlike the ALJ's previous opinion,[5] the ALJ cited specific

---

[5] In the ALJ's first opinion, which was reversed and remanded by this Court, the ALJ, in declining to assign controlling weight to Dr. Azmi's opinion, stated only that Dr. Azmi's opinion

15

evidence, including the "physical examination evidence" from treatment visits, that contradicted Dr. Azmi's opinions. (R. at 693-94.) The ALJ further summarized the cited evidence to explain what was lacking from the record (a lack of distress, above average signs during physical examinations, and lack of reference to severe symptoms or limitations). (R. at 694.) The Court finds that such a description is adequate to allow the Court to meaningfully review the ALJ's reasoning. *See, e.g.*, *Benfield v. Saul*, 827 F. App'x 297, 300 (4th Cir. 2020) (noting that "to enable meaningful judicial review, '[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence[.]'" (quoting *Radford*, 734 F.3d at 295)). In cases where the ALJ provides sufficient analysis and discussion to enable meaningful review, remand is not appropriate. *See Mascio*, 780 F.3d at 636.

Substantial evidence supports the ALJ's conclusion that Dr. Azmi's opinion was inconsistent with Dr. Azmi's own treatment notes (R. at 693-94.) For example, although Dr. Azmi's opinion stated that Plaintiff would be off task 70% of the time due to pain and that Plaintiff's pain was "severe," treatment records reflect that Dr. Azmi frequently noted that Plaintiff was in no acute distress and generally displayed normal vital signs during Dr. Azmi's physical examinations. (R. at 293, 296, 337, 447, 661, 667, 670, 677.) Dr. Azmi frequently described Plaintiff as "well developed, well nourished, hydrated, [and] in no acute distress." (R. at 293, 296, 337, 447, 661, 667, 670, 677.) On other occasions, Dr. Azmi noted that Plaintiff was "doing well in general." (R. at 673.) Even where Dr. Azmi noted Plaintiff's back and foot pain, she stated that Plaintiff was "doing well except for her aches and pains," or "otherwise doing well." (R. at 664,

---

was "inconsistent with the medical evidence of record as a whole," but failed to cite specific sections of the record. (R. at 27.)

16

673.) Likewise, while Dr. Azmi opined that Plaintiff needed a cane for ambulation, nowhere in her treatment notes did she prescribe Plaintiff a cane. (R. at 293, 296, 337, 447, 661, 667, 670, 677.)

Similarly, although Dr. Azmi opined that Plaintiff had to elevate her legs for approximately three to four hours per day, Dr. Azmi's treatment notes do not suggest that she ever advised Plaintiff to elevate her legs for that length of time every day.[6] (R. at 667, 670, 673, 675.) In fact, Dr. Azmi's treatment notes reflect that she only advised Plaintiff to elevate her feet on one occasion. (R. at 670-71.) During that visit, Plaintiff complained of right foot pain, and Dr. Azmi advised "elevation" and instructed Plaintiff to wear hard sole shoes and to perform daily visual examinations of her feet. (R. at 671.) During Plaintiff's follow-up appointment, Dr. Azmi noted that Plaintiff was "better," and her foot pain had improved. (R. at 667.) During other visits, Dr. Azmi simply advised Plaintiff to perform daily visual examinations of her feet, and to take "proper foot care." (R. at 663, 666, 675, 678.) For these reasons, Dr. Azmi's treatment notes do not support the degree of physical limitations expressed in her opinion.

Review of other medical evidence in the record also supports the ALJ's conclusion that Dr. Azmi's opinion was inconsistent with treatment notes from Plaintiff's other providers. (R. at 694.) While Dr. Azmi opined that Plaintiff would have to lie down three to four times per day for at least an hour at a time, as discussed above, Plaintiff's appointments with her cardiologist contradict that assessment. (R. at 345-46, 384.) Additionally, while Dr. Azmi opined that Plaintiff would be off task for 70% of the day and would have difficulty focusing and concentrating, Plaintiff's spine

---

[6] Additionally, no other physicians opined that Plaintiff needed to elevate her legs and no medical records reflect that she was ever advised to elevate her legs for that length of time every day. *See, e.g.*, R. at 416-20 (orthopedic surgeon saw Plaintiff for hip, knee and back pain but did not prescribe elevation); R. at 514, 526 (orthopedic surgeon noted that Plaintiff improved after surgery and did not prescribe elevation); R. at 628 (attending physician who ordered x-rays of Plaintiff's foot indicated that her foot was normal and did not prescribe elevation).

intervention and pain specialist noted that Plaintiff did not have difficulty concentrating or making decisions. (R. at 524, 547.) Therefore, the ALJ's statement that Dr. Azmi's opinion was inconsistent with the treatment notes from Plaintiff's other providers is supported by substantial evidence.

Review of the record likewise confirms that the ALJ considered the extent of Plaintiff's activities of daily living in discrediting Dr. Azmi's opinion. (R. at 45-67, 735-40.) For example, Dr. Azmi opined that Plaintiff could only lift one to five pounds infrequently and could only walk occasionally. However, as discussed above, Plaintiff's testimony regarding her ability to engage in daily activities—such as grocery shopping, preparing simple meals, doing laundry, and driving—support the ALJ's conclusion that these activities were inconsistent with Dr. Azmi's opinion. (R. at 45-48, 67-69.) Although Plaintiff argues, as she did in her previous argument, that the ALJ failed to acknowledge the extent of the Plaintiff's daily activities, and how these activities show Plaintiff's ability to work for eight hours a day, five days per week, the Court finds that argument unavailing. (R. at 692.) As discussed above, the ALJ *did* acknowledge the extent of Plaintiff's daily activities as described by Plaintiff, e.g., that she was able to prepare simple meals, buy groceries with a cart, do her laundry, lift and carry up to seven pounds throughout the day, and drive for twenty to thirty minutes at a time. (R. at 692.) Further, the ALJ did not rely exclusively, or even heavily on Plaintiff's daily activities in assigning Dr. Azmi's opinion little weight. *See Ladda v. Colvin*, No. 3:15-cv-00257, 2017 WL 442878, at *4 (W.D.N.C. Feb. 1, 2017), *aff'd sub nom. Ladda v. Berryhill*, 749 F. App'x 166 (4th Cir. 2018)).[7] Instead, the ALJ primarily relied on

---

[7] Plaintiff cites *Ladda* in support of this argument, however, in that case the Fourth Circuit upheld the ALJ's credibility determination because "he compared [Plaintiff's subjective complaints of pain] with the other evidence on the record." *Ladda*, 749 F. App'x at 171.

the inconsistencies in Dr. Azmi's own treatment notes, as well as the treatment notes of other providers, to assign Dr. Azmi's opinion little weight. (R. at 693-94.)

The Court finds that the ALJ reasonably pointed to evidence in the record that was inconsistent with Dr. Azmi's opinion. Therefore, the ALJ did not err by assigning Dr. Azmi's opinion little weight. *See, e.g.*, *Sharp v. Colvin*, No. 3:14cv340, 2015 WL 1517416, at *4 (E.D. Va. Apr. 1, 2015), *aff'd*, 660 F. App'x 251 (4th Cir. 2016) (upholding ALJ's decision to give treating physician's opinion less than controlling weight where the treating physician's opinion was inconsistent with his own treatment notes and other evidence in the record).

The ALJ's decision also adequately demonstrates that the ALJ considered the factors set forth in § 404.1527(c)(2)–(6) in determining how much weight to assign Dr. Azmi's opinions. The ALJ cited Plaintiff's treatment records with Dr. Azmi over several years, and the findings that Dr. Azmi made during each visit, demonstrating that the ALJ considered the length of the treating source relationship, frequency of examination, and the nature and extent of the treatment relationship. (R. at 693-94.) As previously explained, the ALJ pointed out that Dr. Azmi's opinions were inconsistent with her own treatment notes and the notes of other treatment providers demonstrating consideration of both the supportability and consistency of Dr. Azmi's opinion. (R. at 693-94.) And finally, the record reflects that Dr. Azmi was Plaintiff's primary care physician, and regularly referred Plaintiff to other specialized physicians for treatment on multiple occasions. *See, e.g.*, (R. at 345 (listing Dr. Azmi as the referring provider for Plaintiff's cardiology appointment); R. at 401 (listing Dr. Azmi as the referring physician for Plaintiff's appointment for orthopedic care)).  For these reasons, the ALJ adequately explained her reasons for assigning Dr. Azmi's opinion little weight.

Accordingly, the ALJ appropriately considered Dr. Azmi's opinion, and substantial evidence supports the ALJ's decision to give Dr. Azmi's opinion little weight. The ALJ "buil[t] an accurate and logical bridge from the evidence to [her] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Because the ALJ sufficiently explained the weight assigned to Dr. Azmi's opinion, the Court finds no error.

## V. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 19), GRANTS Defendant's Motion for Summary Judgment (ECF No. 21), and AFFIRMS the final decision of the Commissioner.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

/s/
Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: July 15, 2021